No. 9249.

THE STATE EX REL. NEW ORLEANS WATER-WORKS COMPANY ET AL. VS. ISAAC LEVY ET AL.

Where, upon petition, affidavit and bond, a court has issued its injunction restraining the doing of a certain act until its further orders, without other restriction as to time, the injunction operates until modified or discharged by order of the court.

State ex rel. Water-works Co, et al. vs. Levy et al.

The party enjoined is not justified in disobeying the injunction on the ground that it was not authorized by the allegations of the petition. Such an injunction having been asked in the prayer of the petition, the question whether it was sustained by the allegations thereof was one proper and essential to be decided by the judge at the time of granting or refusing the writ, in the exercise of acknowledged jurisdiction and unquestioned power; and mere error therein, even if it exist, did not authorize a disobedience of the order of the court. Such disobedience was properly punished as a contempt.

There being no question as to the jurisdiction of the court, as to its power to issue an injunction of the kind, or as to the regularity of the proceedings, the relator is entitled to no relief under writs of prohibition and certiorari.

APPLICATION for Prohibition and Certiorari.

*J. R. Beckwith* and *Farrar & Kruttschnitt* for the Relators.

*Jonas & Nixon* for the Respondents.

The opinion of the Court was delivered by

FENNER, J. In the suit of Isaac Levy vs. New Orleans Water-works Company, upon petition, affidavit and bond, and in exact conformity with the prayer of said petition, on October 17, 1883, the civil district court issued a writ of injunction addressed to the New Orleans Water-works Company, in these words:

"You are hereby enjoined and prohibited from ceasing to supply the plaintiff, Isaac Levy, with water sufficient for their business as rice millers, and from cutting off the water supply of plaintiff, Isaac Levy, and from in any manner interfering with the use by plaintiff, Isaac Levy, for the purposes of rice milling, of the water conveyed through the pipes of the New Orleans Water-works Company; and you are so to remain enjoined and prohibited until further orders of this court."

Although the last phrase was not expressly included in the order of the judge, it is implied in every preliminary injunction; and the clerk, in including it in the writ as issued by him doubtless followed uniform precedents, as embodied in the printed forms for such writs.

The injunction was respected until the 5th day of October, 1884, when the Water-works Company cut off Levy's supply of water.

Thereupon, Levy took a rule for contempt against the company and its superintendent, Gardner, for their violation of the above injunction. After due hearing and upon proceedings in all respects regular, the respondent judge made the rule for contempt absolute and punished Gardner by a fine of one dollar; further ordering the defendants to restore all matters subject of this controversy in the position in which they were previous to October 7, 1883, and to pay all costs of the contempt proceeding.

The matter before us is an application for writs of prohibition and certiorari, under which we are asked to declare the judgment upon the rule for contempt to be "null, void and of no effect, and in excess of the jurisdiction of the said civil district court."

So far as the writ of prohibition is concerned, there can be no dispute that the lower court had complete jurisdiction over the case and that it was clothed with all necessary power to enjoin the acts complained of. Hence, the writ of prohibition cannot apply. State *ex rel.* Follett, vs. Rightor, 32 Ann. 1182; State *ex rel.* Behan vs. Judges, 35 Ann. 1075.

It is urged, however, that the invalidity and nullity of the judgment for contempt should be pronounced under the *certiorari*, on two grounds:

1. That the court had issued no injunction enforcing the right of Levy to a water supply beyond the current fiscal year of the Water-works Company, which expired on October 1, 1884; that the court was powerless, under the pleadings, to issue an injunction covering any further period; and that, therefore, the court had no right or power to punish them for disobedience of an injunction which had no existence in fact and in law.

2. That, under the provisions of our Code of Practice, the power of the court to punish breach of its injunction did not include the power to inflict a fine.

I.

That the court did, in point of fact, issue its peremptory injunction forbidding the cutting off of Levy's water, without any limitation as to time, except "until the further orders of this court," is apparent from the face of the injunction.

That no such "further orders" had been given, is not disputed.

That the injunction corresponds to the prayer of Levy's petition and is, therefore, not *ultra petitum*, appears from simple inspection of the record.

That it was within the power of the court to issue such an injunction, at least upon allegations supporting such relief, cannot be controverted. The sole contention is that the allegations of Levy's petition did not sustain or justify the broad injunction asked and granted. Nevertheless, such an injunction was prayed for; and the question whether or not it should be granted was one of which judicial determination was appropriate and essential. In determining this question, the judge did only what he was bound to do; and error therein, if any exist, raises an issue only of mistake in judgment, certainly none of lack of power. State *ex rel.* Marrero vs. Judge, 35 Ann. 214; State *ex rel.* Berthoud vs. Judge, 34 Ann. 782; State *ex rel.* Ins. Co. vs. Judge, 36 Ann. 316.

State ex rel. Water-works Co. et al. vs. Levy et al.

We may say, however, in justice to the district judge, that a careful study of the petition for injunction does not disclose any such gross discrepancy between the allegations and the prayer as is asserted by relator's counsel. The controversy in the suit affected the rate of charge for water supply not only for the current, but for all succeeding years; and the judge might well have regarded the injunction restraining the cutting off of the water until settlement of the controversy as not unreasonable. Arguments based upon extravagant hypotheses of utterly irrelevant injunctions having no relation to the subject-matter of the pleadings, are fallacious in themselves and without application in this case.

We have here no question of an injunction in its inherent nature beyond the scope of judicial power, as in the Liversy case, 34 Ann. 741.

Nor is the order of a character not legally enforceable by process for contempt, as in the Hero case, 36 Ann. 352.

Therefore, those cases have no application whatever. We are not disposed to extend our interference in the delicate matter of the power of courts to maintain their own authority, beyond the limits of strict necessity.

Our rulings have been uniform that we would not, unless in extraordinary cases, use our supervisory jurisdiction as a substitute for appellate powers. 34 Ann. 782; 35 Ann. 838; 32 Ann. 552; 36 Ann. 316; 35 Ann. 214.

Nothing in this case recommends it for the exercise of such exceptional power.

The injunction disobeyed was perfectly peremptory and unambiguous. It was merely interlocutory and was, by its terms and nature, subject to amendment or modification by "further orders of the court."

If relators thought that the judge had fallen into error in extending the injunction beyond what was justified by the allegations of the petition, their proper course was clear, viz: to apply to the court for such "further orders" as they deemed appropriate. They had no right to take the law into their own hands and violate the injunction under a construction which, in whatever good faith it was adopted on their part, is certainly in the teeth of its plain and unambiguous terms, and is opposed to that placed by the judge himself on his own order.

II.

We cannot construe Art. 308 of the Code of Practice as taking away from judges the power to punish disobedience of injunctions by fine as well as imprisonment.

Article 131 had conferred this power in broad terms, saying: "The judges of the Supreme, district and parish courts have the power to punish *all* contempts of their authority by fine not exceeding fifty dollars and imprisonment for a period not exceeding ten days, for each offense of that kind."

The special provisions of Art. 308, in no manner, conflict with or restrict the power to fine in case of contempt of injunctions. It merely, in that special case, enlarges and extends the power of imprisonment by providing that "they may punish him by imprisonment not exceeding ten days, *but which may be repeatedly inflicted until the party obeys the mandate of the court.*" The object was not to restrain powers previously possessed, but to enlarge the power of imprisonment by giving express sanction to the repetition of the term as often as required to secure obedience.

The two articles stand together without conflict; and, under elementary principles, no repeal of the former can be implied.

It is, therefore, ordered that the preliminary restraining order granted herein be now annulled and that the application for writs of prohibition and *certiorari* be denied.

---

### DISSENTING OPINION.

POCHÉ, J. I cannot concur in the conclusions reached by the majority of the Court in this case. As the inferences which I draw from the pleadings are entirely at variance with those announced in the majority opinion, I deem it proper, in justice to relators, to give a somewhat extended recital of the proceeding, as they appear to me from the record, and which are in substance as follows:

On the 17th of October, 1883, Isaac Levy, one of the respondents herein, brought suit against the Water-works Company for the main purpose of restricting the defendant company, to rates for water supply during the ensuing year, conforming to the prices established in its charter.

He charged that for the water supply necessary to his rice-milling operations, the defendant company had exacted of him the sum of four hundred dollars for the year, which was largely in excess of the amount to which the company was legally entitled, and he prayed for judgment condemning the company to confine its charges to the rates established by law.

Alleging his willingness to pay for his water supply according to legally established rates, he charged that, unless restrained by injunc-

tion, the company would cut off his water supply " and thus cause him irreparable injury, by entirely destroying his business, in a sum exceeding one thousand dollars." Hence he prayed that the Water-works Company be enjoined from ceasing to supply him with water in sufficient quantities for his business of rice-milling, and from in any way interfering with him in his use of water for the purpose of rice-milling, through the pipes of the defendant company. An injunction was issued as prayed for, and was obeyed by the defendant until the 4th of October, 1884, when Levy was notified in writing by the superintendent of the company, that unless he made suitable arrangements for his water supply for the new year, beginning in October, 1884, and ending in September, 1885, his water would be cut off.

On the next day the water was cut off. Whereupon Levy took a rule for contempt against the company and its superintendent, for their alleged violation of the injunction issued as hereinabove set forth.

For answer the defendants in the rule disclaimed any intention of contempt for or disobedience of the authority of the court, but averred in substance, that the injunction granted in the premises, could not extend in its effect beyond the time contemplated in Levy's petition, which had reference only and exclusively to the water supply for the fiscal year begining on the first of October, 188:', and ending on the 30th of September, 1884; and that therefore they were not amenable to any injunction touching the disposition of their water; their private property, over which they had perfect dominion, on the 5th of October, 1884.

Relators, in their present applications charge the invalidity and nullity of the judgment on the rule for contempt on the grounds following:

1. That the court had issued no injunction enforcing the right of Levy to a water supply for the year 1884 to 1885; that the court was powerless, under the pleadings, to issue an injunction covering that time, and that therefore the court had no right or power to punish them for the alleged disobedience of an injunction which had no existence in fact and in law.

2. That under the provisions of our Code of Practice (article 308) the power of the court, for the enforcement of its injunction, was restricted to the imprisonment of the defendant, and did not include the power to inflict a fine.

I concur in the opinion that relators are entitled to no relief under the writ of prohibition, but I am firmly convinced that they have made a proper and a sufficient showing for the application of the writ of cer-

*tiorari.* The object of that writ is to authorize the appellate tribunal to examine into and ascertain the validity of the proceedings complained of. C. P. 855. It can only be invoked when the matter complained of is to be decided in the last resort C. P. 857. The main purpose of the writ is to prevent a denial of justice in matters which cannot be received on appeal.

Respondents urge with great force that the suit between the Water-works Company and Levy being appealable, none of the findings or rulings of the District Court are amenable to review by a superior tribunal by means of a *certiorari* or other remedial writs. From the record the answer comes that nothing in the pleadings discloses the appealable character of the principal suit. The matter in dispute is the difference between the sum of four hundred dollars claimed by Levy for the supply of water for the ensuing year and the amount which Levy would recognize as a legal charge. That difference may be two hundred dollars, or it may be but ten dollars. The record is absolutely barren of any information on that point. Hence, at this stage of the action it is impossible to decide whether the suit is appealable or not; and if appealable, to what court. In their answer respondents contend that the effect of their injunction cannot be restricted to one year's supply, but must be construed, as it was intended, to cover an indefinite number of years in the future. Under that theory it might be shown that the appeal would be to this Court, and not to the Court of Appeals, as respondents contend for. But be that as it may, it is elementary that no appeal lies from a judgment on a rule for contempt. It was so held in this very case by the Court of Appeals for the Circuit of New Orleans on an application by these very relators for a mandamus on the district judge, with a view to coerce him to grant an appeal from his judgment on the rule.

The argument that the case being appealable the relators would find adequate relief from the judgment on the rule for contempt on appeal from the final judgment in the case, has no force in the emergency of this case.

The main issue in the cause involves the legality of the company's rates for water supply. If the rates claimed be found correct, the result would be the rejection of plaintiff's demand and the dissolution of his injunction. If the charges are found to exceed the legal limit, the judgment would restrict the company to the limits thus ascertained, and the injunction would be maintained. In either event the correctness of the contempt judgment would not be an issue in the case, and

could not be reviewed on appeal. There is no force in the suggestion that relators' remedy would have been in obedience to the injunction as construed by Levy and his counsel. We must deal with the stubborn fact that relators did not comply with the injunction as thus construed, and that the question presented for solution is the validity of the proceedings under which they were held to be in contempt.

Before the adoption of the present Constitution the application of the writ of *certiorari* was of very rare occurrence.

The broad provisions of the Code of Practice were circumscribed, and in a measure paralyzed, by the constitutional limits to the jurisdiction of this Court.

Hence, in the case of the State *ex rel.* Geale vs. Recorder, 30 Ann. 450, our immediate predecessors found no constitutional warrant to interfere in the prosecution of the relator before the recorder, because the case was not appealable, whether viewed as a civil or as a criminal case; while they admitted that the rules of the Code, if not circumscribed by constitutional barriers, would have warranted their interference. Under the effect of article 90 of the present Constitution these barriers, or obstacles, have been entirely removed. Hence, under the provisions of the Code, as amplified, and not abridged or curtailed, by our present constitutional jurisdiction, we have acted on applications for relief under that writ even in cases originating in justices of the peace courts. State *ex rel.* Montague vs. Coquillon, 35 Ann. 1101.

Acting under the same constitutional and legal power we enforced the provisions of this writ in favor of relator in the recent case of the State *ex rel.* Andrew Hero, praying for writs of *certiorari* and *habeas corpus.* 36 Ann. 352. In that case the proceeding which we reviewed was an incident in the case of th Succession of Kate Townsend, which was appealable, and has been on appeal before this Court.

For the same reasons we have the power to examine into the validity of the judgment under which these relators were punished for contempt.

It is too plain for argument that no court has the power to enforce an injunction which does not exist, and that no act can be committed in disobedience of an injunction which has no existence.

As already stated the relators in this case have been punished for having cut off Levy's water supply on the 5th of October, 1884, in disobedience of an injunction held as prohibiting that act, on that day and in the manner that it was done. That effect is attributed to the injunction granted to Levy on the 17th of October, 1883, in his suit against the Water-works Company for the purpose of restricting their charges for his water supply, as above set forth.

As the injunction was issued as prayed for, it must be measured in its extent by the allegations of plaintiff's petition. It is elementary that no greater relief can be legally granted than is justified by the pleadings.

I transcribe in full the following as the pivotal allegations of Levy's petition:

" That the only means of obtaining sufficient supply of water for the purpose of running the steam engines necessarily used in petitioner's business, is from the pipe and mains of the New Orleans Water-works Company; that said Water-works Company is claiming and exercising the exclusive privilege of supplying water to the inhabitants of the city of New Orleans, and that said company is obliged, by law, to supply the said inhabitants with sufficient water; that under the charter the said Water-works Company cannot charge any higher rates than were paid to the city of New Orleans, on March 31, 1877; that petitioner is ready and willing to pay to the said Water-works Company the rate paid at the aforesaid date, to the city of New Orleans, but that the said Water-works Company refuse to receive the same, and refuse to furnish water to petitioner, except upon petitioner paying a much larger sum; that said Water-works Company demand of petitioner the sum of ($400) *four hundred dollars*, for a water supply for the ensuing year, and refuse to furnish the petitioner any water except upon the payment of said sum, which is far in excess of the amount really due by petitioner.

" That the said company has declared its intention to harass petitioner unless said sum so illegally exacted shall be paid; and petitioner fears that, unless restrained, the said Waterworks Company will cut off the water supply of petitioner and thus cause him irreparable injury, by entirely destroying his business, in a sum exceeding one thousand dollars."

The mere reading of those allegations affords a real demonstration of relator's contention that nothing was in contest between the parties but the water rates for the ensuing year; that is, the fiscal year of the company's contracts, beginning in this instance on the first of October, 1883, and ending on the 30th of September, 1884. The proposition that the injunction prayed for could legally cover no other year, is too plain for argument. I, therefore, contend that the judge who granted the injunction did not contemplate to extend its effect and operation beyond the time which was in contest under the pleadings, and that the injunction had had its day before, and had expired on, the first day of October, 1884. I note in this connection the argument predicated on the language in the writ of injunction as issued by the clerk, wherein the defendants were to remain enjoined until the further orders of the

court, thus apparently extending the limit of the injunction; but as shown above, the allegations and the prayer of the petition did not call for such relief; and the order of the judge simply directed that an injunction issue as prayed for. Hence, it is clear that the injunction as issued by the clerk did not conform to the order of the judge or to the proceeedings; and that it was in excess of the relief prayed for in this petition. Had the judge, in granting the injunction, intended to give it effect beyond the last mentioned date, his intention would have been illegal and of no effect, because that relief would not have conformed to the plain meaning of the pleadings. Hence, it follows that respondents are effectually impaled on either horn of the dilemma.

The action of the judge on the trial of the rule for contempt therefore involves him in an ¦attempt to enforce a writ of injunction which had forcibly expired in fact, or under well defined legal restrictions; or, in other words, he is placed in the attitude of punishing for contempt a party who has done an act from which he was under no legal restraint.

We have held that a party could be relieved, by a remedial writ, from the effect of an injunction illegally issued; or for the granting which the court had no legal power.    State ex rel. Liversy vs. Judge, 34 Ann. 741; State ex rel. Behan vs. Judges, 35 Ann. 1076.

We should not decline relief in the same manner to a party who is held in contempt for the violation of an alleged injunction which has no existence either in fact or in law. In such a case the act of the judge can, without too violent a presumption, be assimilated to a judgment rendered without due process, or without hearing according to law.

I respectfully submit that there is no force in the suggestion that the grievance complained of is a mere error of judgment and can be corrected by appeal only. The same objection could be made in every application for any of the remedial writs. The same reasoning could have defeated the application for similar writs which we unanimously and favorably entertained in the recent case of the State ex rel. Page vs. Recorder, in which we prohibited the magistrate from entertaining a complaint against the relatrix because preliminary steps, required by a city ordinance, had not been complied with.

Under the foregoing views, supported in my opinion by ample authority, I conclude that the judgment rendered by the district judge is an absolute nullity and that it should have been set aside by means of the writ of certiorari.

Bermudez, C. J., concurs in this opinion.